Good morning, Your Honors. May it please the Court, Richard Deliberty appearing on behalf of New Cingular Wireless Services, Inc. I'd like to reserve three minutes for rebuttal. I want to start by telling you what I don't plan to talk about today. There's a ream of evidence, and most of the briefs are devoted to the merits of the released claims, the claims that are released by the settlement agreement. There are a lot of issues that we think that the bankruptcy court should have made findings on that they didn't, but I think the briefs cover that very well. So I want to try to take a little more of a bird's eye view and tell you what I think sort of the real story is here and go over what the five biggest mistakes that I think the bankruptcy court made are. So the background of this case is that the owners of Wirecom, the McCormicks, emptied this company of money in an effort to defraud Cingular from recovering about a million dollars in debts that Wirecom owed. They used that money to continue their business under the guise of another company called Premier. And importantly, in order to continue the business, they used that money to pay off all of Wirecom's other creditors because, of course, in order to continue the business, they needed those other creditors. Instead of Cingular, they had Verizon, but for pretty much everybody else, they needed to have the help of those people. And as a result of that, this bankruptcy is really a fight between Cingular and the McCormicks. And for reasons we don't understand, the trustee picked a side in that fight, and he entered a compromise with the McCormicks, the effect of which was to absolve them of their fraudulent transfers and corporate abuses and of the debts that they owe to Cingular. And it allows $628,000 in claims that the McCormicks filed in the bankruptcy that have no documentation and that were not investigated by the trustee before he agreed to allow those claims. Now, the bankruptcy court's job in this case should have been to learn the facts, make an objective assessment for itself of whether it thought that the compromise was in the best interest of the estate by comparing all of the terms of the compromise, by comparing the principal term, which is the release of the claims against the McCormicks, against the other terms, which is what the court forgot to do. So let me get straight into what I think the five biggest mistakes are. The first is that the court made no findings on whether consideration was adequate under the compromise. The only thing that the estate got in return for releasing the McCormicks claims and for approving their $600,000 of claims in the bankruptcy was $250,000,  the sale of a condominium that belonged to the estate. Well, wasn't that, I mean, it seems to me there was discussion in the bankruptcy court and probably by the trustee over whether there was going to be an argument about that and it would take some, there were risks in deciding that issue, whether it was actually owned by the estate or it was owned by the individuals. Well, yes, it was definitely claimed on wire comps tax returns. And in fact, in the bankruptcy, when we ultimately found out what the McCormicks claims represented after actually the compromise had been entered, they were making claims in the bankruptcy court for their expenses for this very same real estate. So they continue to treat it as an asset of the estate because they want to be reimbursed for taking care of it. Should we give any weight or consideration to the fact that your client apparently was unwilling to buy this action in the state court and prosecute it on its own? They didn't need to leave it with the trustee. If they had a little confidence in it, they ought to have done that. Well, thank you for asking that question because I think that's very important. I think that it was absolutely improper for the court to consider that. There isn't any authority that I've been able to find that says that the bankruptcy court can rely upon a creditor's decision to overbid a settlement agreement or not. In fact, the only authority I know is the line of cases beginning with TMT Trailer Ferry that say that the bankruptcy court's job is to learn what the evidence is and make its own independent assessment of whether the settlement is in the best interest of the estate. And so I think that to say hey ---- Do you think that has no bearing on the assessment, the objective assessment evaluation? Well, I don't think that it has any bearing. And the reason why is that it puts the creditor objecting to a compromise in sort of a catch-22. No matter how crazy the trustee's decision is to enter this compromise, no matter how improper, no matter how expensive it's going to be to the creditors, what the bankruptcy court did here basically allows the court to say, hey, I'm not going to look at the evidence unless you overbid it. That's not really what happened here. I mean, the trustee's explanations are extremely extensive. I mean, you make it sound as if it's kind of a cavalier bottom line where, oh, gee, well, I guess zero over here and a little over here. It's not ---- There's a rather lengthy analysis explaining what the obstacles are to achieving these different claims and so on. You would have liked something different, but I have difficulty seeing that it wasn't done with great care. Well, what's troubling to me about the analysis in the trustee's brief is that there are huge mistakes based on the They're based on very clear evidence. They're very simple mistakes. There are a few documents you can look at and see that the trustee's basic assessment of the claims was absolutely wrong. And what's most troubling about that is that the bankruptcy court didn't address those issues. So on page 34 of my opening brief, I have a chart that goes through what those big mistakes were. For instance, the first was that the trustee believed that there was only $144,000 in cash transferred between the two companies. Well, the financial papers unmistakably show that it was closer to half a million dollars and that the $144,000 represented the value of inventory of the company. There was deposition testimony to back that up. There were documents. And if the court didn't agree with that, I think that we at least deserved a finding on the record that said, have looked at this evidence, and here's what I think. But in this case, we didn't get that. So Singular and this Court are both left in the uncomfortable position of not really knowing whether the court looked at it or not, or if it did, why it decided that it was not compelling evidence. And that's true of each of those issues that I listed in that chart. So if there are any questions about that, maybe I'll go back to my five points. That was actually the fourth of them. The second issue, which I think is very important, is the approval of the allowance of the $600,000 in claims in the estate. Now, there are two statutes that are relevant here that I think make this piece of the settlement agreement especially troubling. And I think under the bankruptcy code, these issues deserve separate treatment. Perhaps it should have even been treated as two motions in one. The, you know, Singular is claiming that the McCormick's defrauded the creditors of the estate. Under Section 502D of the bankruptcy code, the claims by creditors accused of defrauding the estate are required to be disallowed. There was no discussion of whether the claims against the McCormick's. Kennedy. What's the size of Singular's claim? Well, as the bankruptcy court knew, it was about $3 million. In fact, the arbitration, interestingly, was just finished yesterday. We had the closing argument yesterday, and our claim is actually the debt part of the claim is a little smaller, and the damages part of the claim is a little bigger. But to see what the actual economic effect of that $600,000 claim is. Well, it's about 20 percent. About 20 percent of. Assuming that the entire $3 million claim is. Assuming Singular gets an award of $3 million. Well, first of all, the trustee says in his briefs that he in the bankruptcy court that if Singular wins, he thinks that we probably have fraudulent transfer claims. In fact, the only risk that he identifies in the fraudulent transfer claims is that Singular might not win in the arbitration. As we pointed out in the bankruptcy court at the time that the bankruptcy was filed, the arbitration was a week away. The trustee tells us that the reason they filed bankruptcy is that they knew they were going to lose. It's in the briefs. And so we told the bankruptcy court, look, if this is really the main issue, it's a huge issue, I could present it all in this court. In fact, the arbitration took six days. So I could present all that evidence here, but look, we were a week away from the arbitration. Now, as it turns out, the bankruptcy court two weeks later denied our motion to compel arbitration. And maybe that's why the court didn't think this was the appropriate approach, because the court planned to resolve this issue itself. But the district court reversed, and so we were able to get the arbitration completed. And, again, ultimately that was just yesterday we had closing arguments under the JAMS rules. We should have a decision in 30 days. And we'll know the issue, the entire risk that the trustee points to in his brief of this litigation. That risk will be resolved in the next 30 days. And had the bankruptcy court immediately granted our request for arbitration, then the same thing could have been true then. It could have been resolved some time ago. So does that answer your question? I think so. Okay. So the one other point that I want to make sure that we talk about before I'm done here is there was one more excuse that the court had for not doing a detailed analysis of the evidence of Singular's fraudulent transfer claims. And that was that the trustee had decided to sue Singular. Now, I think this is especially troubling, too, because the bankruptcy judge's job is to be a check on the trustee, do an objective assessment of the evidence, and make sure the trustee is doing the right thing. And here the court is saying basically, well, if the trustee decides he's going to sue one of the creditors, then I don't have to trust that creditor. I don't have to listen to what he has to say. The court directly says the use of the creditors is meant to exclude those that the trustees got a lawsuit against. Well, that is the point. You're using your rebuttal time. Well, I think I've made that point, so I will reserve the remainder of my time for rebuttal unless you want to ask a question. No, I'm fine. Thank you. Thank you, Your Honors. Morning, Your Honors. May it please the Court. My name is Dan Baxter, and I'll be delivering oral argument on behalf of the trustee in this case. I want to make three points in response to what counsel just had to say. The first is the notion that the trustee picked a side, in this case, to use his words, is simply not true.  The trustee made available the right to buy the claim for more than the $257,000 that was at issue. And we didn't put conditions on it. It wasn't buy the claim for $1 million, buy the claim for $2 million. It was buy the claim for anything over and above what the amount at issue is. They declined to do so. The trustee didn't pick a side. The trustee is simply interested in maximizing the recovery to the estate. Now, Mr. Deliberty indicated that there's no, that the fact that Singler decided not to overbid is of no moment whatsoever. Well, of course it is, because it bears on the truth and veracity of the claim that he trumpets as being the main impediment to this being a legitimate settlement. If they're saying that, in fact, there's a $2.7 million pot of gold at the end of the rainbow, and we're not going to pay $1 more than the $257,000 that's at issue and that's the subject of the compromise, doesn't that, as a common-sense matter, bear on how they really view their claim measures up? I submit that it does. In determining the legitimacy of the claim, the other thing that he mentioned is that other creditors were paid off and that, you know, the implication being why is it that Singler all of a sudden is the one that's in the corner with no recovery and everybody else is made whole? Well, the answer to that is the Singler claim is the only one that was disputed. It was the subject of a significant dispute. Not only was there a dispute as to the amounts that Singler claimed were due in Owing, but there was a claim back against Singler for approximately $1.97 million. So that claim was disputed in a hardcore, substantive manner that, again, belies the notion that the trustee would have just been able to walk the path, just been able to strut along, get to the end of that rainbow, and get the money. Remember that what Judge Klein's dealing with is not a fait accompli. He is, at the beginning of the process, trying to assess whether or not this settlement reaches above the lowest point in the range of reasonableness, and that's the Drexel-Burnham-Lambert case. That's what he's dealing with. And if he's going to accept the notion that there is this pot of gold and that it's better darn well have something more than just the say-so of Singler. And in this case, Your Honors, that's all he got. The only support for the $2.7 million claim, both before Judge Klein and before Judge England, was the unverified, unsigned or, excuse me, not unsigned, but unverified complaint as well as the Jams arbitration brief. And even before Your Honors, the only additional piece of evidence that is cited, and this, I believe, is at page 4 and 5 of the opening brief, is the deposition testimony of Kathy Wittree, who was the operations manager for Wirecom. And they indicate that on these good-faith advances that Ms. Wittree testified in her deposition transcript that there was no dispute and that all of those sums were, in fact, paid, there was no dispute. In fact, that is not what Ms. Wittree testified to. And if you simply look at the deposition testimony, which is at page 414 through 416 of the excerpts of record, she, in fact, testifies largely to the opposite. She says that it was unclear as to what Singler had paid and whether or not any of those payments were disputed. So that submarines significantly the $2.7 million recovery that, again, Singler is trumpeting. And the district court noted, in fact, that all they had, at least before the district court and certainly before the bankruptcy court, were the unsubstantiated documents that I previously referenced. Secondly, if you look at the claim back, which, again, is an affirmative claim for relief that the Estate would have and has been pursuing, that claim, their main defense to that claim that they talk about in their briefs is testimony from Timothy McCormick, that the $1.1 million or, excuse me, the $1.797 figure that is the claim back against Singler neglected to take into consideration a bunch of reconciliation payments. Well, that's true. And you want to know why? Because Mr. McCormick testified that they didn't receive any reconciliation payments. So, again, we're talking about significant evidentiary impediments. And if the trustee is going to sally forth on this path to recovery, again, he better darn well have something more than just fiat, and that's all he had. And that's all the bankruptcy court had. The other point that Mr. Deliberty raises, which I have a real fundamental problem with, is it simply imposes upon the bankruptcy judge a standard that doesn't exist. It just doesn't exist. The complaint here is that the bankruptcy judge, Judge Klein, didn't issue findings on this and that and this and that. He's not obligated to do so. Under LaSalle, under the Ziegenhager case that Judge Graber was part of a panel that issued a memorandum of opinion two years ago, you're not required to hold a big evidentiary hearing. You're not required to have a mini-trial. And you're not required to issue an extensive written opinion. All you're required to do is look at those A and C Woodson factors, articulate them, and apply them, and Judge Klein indubitably did that. This whole dispute is a result-oriented dispute that is being raised by Singular. It's cloaked in the guise of a process-based dispute, but it's not. Judge Klein did everything that he was duty-bound to do. He articulated the factors. He applied the factors. He made findings relative to those factors. And the fact that he didn't specifically orally or in writing address every single argument that Singular makes does not mean that he acted in derogation of his duty, and it certainly does not mean that he abused his discretion in approving this compromise. So with that, Your Honor, I'd open it up to questions. I think we're satisfied between your argument and your briefs. Thank you very much, Your Honor. Thank you. You do have some rebuttal time remaining. Well, I'll say it's a little frustrating to listen to discussion of the evidence and the merits of the claim having very recently sat through a six-day arbitration and, again, closing arguments just yesterday because I know what the actual evidence turned out to be. Now, that's not part of the record here. And it also isn't relevant, is it, to the – if there's a reasonable assessment made at the time, knowing what is knowable at the time, it's not something you go back and look a couple of years later or a couple of months later and see how it actually turned out. Well, you know, the cases where – the cases – this is an unusual case among the mines because most of those cases involve lawsuits at their very inception, before discovery has begun. One of the biggest issues in many of those cases is whether there is – whether discovery is going to disclose evidence to support the claims in the end. This case is a little bit different because, for the most part, there was a lot of evidence to look at. And the problem was that the court didn't look at it. And it's very clear, it's laid out in our brief, but the – we were ready to go to arbitration the next day. And to say that we relied too much on our brief – I mean, we told the court, look, we're giving you a summary of what's going on here. We think the procedural facts are enough to show that our claim against Wirecom probably has validity because they filed bankruptcy two weeks before the arbitration. The trustee admits that's because they knew they were about to lose. But we said, if you'd like us to, we're willing to put all this evidence on. But we said, you know, look, there's an easier solution to this. Why should we go through the trouble of putting all this evidence in this court when this ultimately has to be decided by the bankruptcy court? And the only reason we're here is because the bankruptcy was filed a week before the arbitration was going to happen. Just let the arbitration finish. And this question will be resolved. There's no reason to rush it. And so the court could have allowed us to put the evidence on. We had it available. Or the court could have allowed the arbitration to be completed. And I submit that the reason the court decided not to do that is because he planned to deny arbitration and was going to have the issues in front of himself. But I hope that answers the questions. I mean, there's obviously a lot more in the briefs. I think we have no further questions. So the case just argued is submitted. Thank you both very much for your arguments.
judges: Fletcher B. , Canby, Graber